UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBRA J. LOVETT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:19-cv-2126-JAR |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Debra Lovett's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.

**I.     Background**

Plaintiff applied for supplemental security income on January 23, 2017, alleging disability as of January 19, 2017 due to paranoid schizophrenia, bipolar, depression, hearing voices, and various other mental issues. After her application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on October 11, 2018, the ALJ issued a written decision on February 12, 2019, denying Plaintiff's application. Plaintiff's request for review by the Appeals Council was denied on June 27, 2019. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II. Facts

The Court adopts Plaintiff's Statement of Facts (Doc. No. 11-1) to the extent they are admitted by the Commissioner (Doc. No. 12-1). The Court also adopts Defendant's Statement of Additional Facts. (Doc. No. 12-1). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III. Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration.

Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step

in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

4

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

### IV.   Decision of the ALJ

The ALJ found Plaintiff had the severe impairment of schizophrenia, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-13). After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels. (Tr. 14). However, Plaintiff should never be required to deal with the public, and should be limited to simple, routine tasks with minimal changes in job setting or duties with only occasional interaction with supervisors and co-workers. (Tr. 14). Based on the testimony of the vocational expert ("VE"), the ALJ concluded, after considering Plaintiff's age, education, work

experience and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 18). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 25).

## V.     Discussion

In her sole issue on appeal, Plaintiff argues the ALJ erred in finding the VE's opinions regarding job incidence data reliable, resulting in the application of the wrong legal standard as set forth in Biestek v. Berryhill, 139 S. Ct. 1148 (2019). (Doc No. 11 at 2).

At Step Five, it is the Commissioner's burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.' " Biestek, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1)). See also Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). For guidance on such questions, the ALJ often relies on vocational expert testimony. Vocational experts must have specialized and current knowledge of "working conditions and physical demands of various jobs; ... the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." Biestek, 139 S. Ct. at 1152 (internal quotation marks omitted). In providing assessments, vocational experts may rely on publicly available sources as well as data developed through their own experiences and research. See id. at 1152 (citing Social Security Ruling, SSR 00–4p, 65 Fed. Reg. 75760 (2000)).

At the hearing, the VE opined there are jobs Plaintiff could perform, including a laundry folder with approximately 105,000 jobs available nationally; a small product hand packer or packager with approximately 700,000 jobs available nationally; and light janitorial type jobs with approximately 800,000 jobs available nationally. (Tr. 52). Upon questioning by Plaintiff's counsel, the VE identified "Research by the Bureau of Labor Statistics" as her source for the job numbers

provided and stated that this information was published on-line. (Tr. 53) The VE was unable to identify the specific website, but stated it was under the Bureau of Labor Statistics and listed under publications and databases. (Id.). When asked if she drew the numbers cited directly from that information or if she made any alterations to the numbers, the VE responded that she "may make alterations to the numbers" based on changes in unemployment statistics. (Id.). The VE added that because the jobs are typically clustered, she usually adjusts the numbers to reflect the portion of the jobs she thinks match the DOT Code she is using. (Tr. 53). The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles and Selected Characteristics of Occupations, but stated that because the DOT does not address off-task behavior, her opinion that there would be no jobs for an individual who is off task more than ten percent of the workday due to mental health symptoms was based upon her experience in job placement and job analysis. (Tr. 54).

Plaintiff's counsel did not object to the VE's opinions during the hearing. Instead, counsel raised her objection in a representative's brief arguing that the VE's testimony as to other available work and job incidence data is less than substantial evidence to support the ALJ's findings. (Tr. 209-211, 215). In her decision, the ALJ overruled the objection, finding that because Plaintiff's counsel had ample opportunity to cross-examine the VE during the hearing, it was inappropriate to raise such an objection post-hearing.[1] (Tr. 19). The ALJ further found the VE's job information reliable. (Id.).

Plaintiff argues that under Biestek, the ALJ must scrutinize the basis of a VE's opinion for indicia of reliability in every case – a high bar for substantial evidence that she contends was not

---

[1] Plaintiff argues she was entitled to make her objection after the hearing (Doc. No. 11 at 6-7). Regardless of the merits of her argument, the ALJ in fact considered and ruled on her objection.

7

met in this case. The Commissioner maintains that Plaintiff's reliance on Biestek is misplaced. The Court agrees.

In Biestek, a former construction worker applied for social security disability benefits, claiming that due to mental and physical disabilities, he was unable to continue working. The SSA and the ALJ held a hearing and heard testimony from a VE. The VE testified as to jobs Biestek could or could not perform and the availability of such jobs in the market. The VE was questioned on the factual basis of her conclusions which, as she explained, were the product of her individual work and market surveys. When Biestek's counsel requested a copy of the surveys, the VE responded that she wished to keep them confidential because they were part of her client files. The ALJ indicated he would not require the VE to produce the files and Biestek's counsel asked no further questions about the basis for the VE's numbers.

Following the hearing, the ALJ denied Biestek's application in part, concluding that his disabilities should not have prevented a successful adjustment to other work. The ALJ based his conclusion on the VE's testimony about the availability of sedentary unskilled occupations in the economy. Biestek sought review in federal court. The primary point raised on appeal was the VE's refusal to provide her factual basis. In fact, while the parties seemingly agreed that an expert's testimony may constitute substantial evidence even when presented without supporting data, the conflict centered on the question of whether a refusal to produce the existing studies and data after a specific request to do so was sufficient to discredit the expert's testimony as a whole. The District Court rejected this argument and the Sixth Circuit affirmed.

The Supreme Court held that the VE's refusal to provide the data underlying her opinion upon the claimant's request does not categorically preclude the testimony from constituting "substantial evidence." The Court explained that in determining whether an agency determination

is supported by substantial evidence, a court "looks to an existing administrative record" and determines whether it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 139 S. Ct. at 1154. The Court rejected Biestek's argument that the refusal to provide data always interferes with effective cross-examination or that the absence of such testing always requires treating an opinion as unreliable, stating, "even without data, an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods – where she got the information at issue and how she analyzed it and derived her conclusions." Id. at 1156. The Court found that the issue of whether a VE's testimony constitutes substantial evidence must be determined on a case-by-case basis, taking "into account all features of the [VE]'s testimony, as well as the rest of the administrative record," while defer[ing] to the presiding ALJ, who has seen the hearing up close." Id. at 1157. In many cases, where the expert is qualified and presents cogent testimony that does not conflict with other evidence in the record, "the expert's testimony still will clear (even handily so) the more-than-a-scintilla threshold" even when the expert declines to provide the underlying data. Id.

After consideration of the evidence in the record in light of the factors discussed in Biestek, the Court finds substantial evidence to support the ALJ's reliance on the VE's testimony. The VE's resume indicates she has more than thirty years of relevant experience working as a vocational rehabilitation counselor and consultant, and is a certified rehabilitation counselor, disability management specialist, and licensed professional counselor. (Tr. 201-202). Indeed, Plaintiff's counsel had no objections to the VE's professional qualifications. (Tr. 50-51). The VE cogently and thoroughly answered all of the questions put to her by the ALJ and by Plaintiff's lawyer. (Tr. 51-54). The VE testified about the sources on which she relied, and Plaintiff's counsel had the opportunity to cross-examine the VE about her sources and methodology. (Tr. 53-54). Moreover,

unlike the expert in Biestek, the VE here did not decline to supply her underlying sources; rather, she merely stated that she was unable to identify the specific website from which she drew her numbers.[2] Plaintiff's counsel did not submit any post-hearing evidence that undermined the VE's testimony. Nothing in the record before the ALJ conflicted with anything in the VE's testimony regarding the jobs available to someone with Plaintiff's RFC. On these facts, the Court concludes there was sufficient evidence from which a "reasonable mind" could conclude that the VE's testimony was reliable and that the Commissioner had met his burden of showing that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

The Court notes that Plaintiff has cited no cases holding that similar evidence is not sufficient to support an ALJ's Step Five finding, nor has the Court's own research revealed any. To the contrary, many post-Biestek cases have found similar or less convincing VE evidence to constitute substantial evidence. Hayden v. Saul, No. 4:19-CV-187-SPM, 2020 WL 888002, at *7–12 (E.D. Mo. Feb. 24, 2020) (citing Grome v. Comm'r, No. 8:18-CV-2084-T-MCR, 2019 WL 4594597, at *2-*5 (M.D. Fla. Sept. 23, 2019) (affirming the ALJ's reliance on testimony regarding job numbers even where the plaintiff argued that they appeared to be grossly overstated even to a layperson and the numbers were inconsistent with job numbers in the Occupations Employment Statistics publication; noting that the plaintiff's attorney had stipulated to the VE's qualifications and had not questioned the job numbers cited or the methodology on which the ALJ relied and that "there is no requirement that an ALJ independently investigate and resolve conflicts between a VE's testimony and information provided by the OES regarding job availability figures"); Dahl v.

---

[2] As the Commissioner notes in his brief, the SSA regulations establish that Bureau of Labor Statistics data is an acceptable source, 20 C.F.R. § 416.966(d), and VE testimony citing to the BLS has been found to be substantial evidence in support of Step Five findings, see Adkins v. Berryhill, No. 4:16CV376 PLC, 2018 WL 950209, at *6 (E.D. Mo. Feb. 20, 2018) (finding ALJ did not err in adopting vocational expert's testimony based on BLS data).

Saul, Civ. No. 18-C-676, 2009 WL 4239829, at *4 (E.D. Wis. Sept. 6, 2019) (rejecting the plaintiff's argument that the VE's testimony was without adequate reliable foundation where the VE testified about the numbers of certain light-work jobs the claimant could perform without the use of one arm, then testified that to obtain those numbers she looked at information from the U.S. Department of Labor, Bureau of Labor Statistics, the estimate numbers per SOC code, and information from Job Browser Pro, and made the best assessment as to which numbers seemed most appropriate; the court stated, "not only did [the claimant's] attorney not ask the VE for the supporting documentation, he elected not to even cross examine her. The VE's testimony thus stood not only unrefuted but unchallenged. Under these circumstances, the ALJ was entitled to rely on it in reaching his conclusion."); Gomez v. Berryhill, 2019 WL 5680841, Civ. Action No. 3:18-CV-11738, at *7-*9 (E.D. Mich. June 11, 2019) (holding that the VE's testimony about the jobs the plaintiff could perform constituted substantial evidence even where the VE admitted, on cross-examination, that the DOT was "antiquated" and that he did not have specific knowledge that the jobs identified still existed in the national economy; noting that the VE had testified that he was familiar with jobs that exist in the national economy, that he had extensive experience in job placement, and that the DOT was the relied-upon standard in his industry), *report and recommendation adopted*, 2019 WL 3491621 (E.D. Mich. Aug. 1, 2019); Tina E. v. Berryhill, No. 1:17-cv-00649, 2019 WL 3229196, at *17-*18 (W.D. N.Y. July 18, 2019) (rejecting the plaintiff's argument that the ALJ erred by relying on a VE's testimony regarding job numbers and finding that substantial evidence supported the ALJ's Step Five finding where the VE testified that there were 8,830 surveillance system monitor jobs "but did not disclose how she made that determination").

## VI. Conclusion

For these reasons, the Court finds substantial evidence to support the ALJ's reliance on the VE's testimony at Step Five.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** without prejudice.

A separate Judgment will accompany this Memorandum and Order.

Dated this 27th day of April, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**